Shawn A. McMillan, Esq. – SBN: 208529
attyshawn@netscape.net
Stephen D. Daner, Esq. – SBN: 259689
steve.mcmillanlaw@gmail.com
Adrian M. Paris, Esq. – SBN: 301355
adrian.mcmillanlaw@gmail.com
THE LAW OFFICES OF SHAWN A. MCMILLAN, APC
4955 Via Lapiz
San Diego, California 92122
Phone: (858) 646-0069
Fax: (858) 746-5283

Attorneys for Plaintiffs Allison Walter, by and through
his successor in interest, Lisa Walter, and Lisa Walter

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

| | |
|---|---|
| Allison Kitrell, a deceased minor, by and through her successor in interest, Hazel Yoshida; Hazel Yoshida, an individual, | Case No: |
| | **COMPLAINT FOR DAMAGES** |
| Plaintiffs, | Claim 1:    Breach of Mandatory Duties |
| vs. | Claim 2:    Negligence |
| County of Riverside, a public entity; Marlene Zaragoza, an individual; D. Purcell, an individual; Alejandra Juarez-Espinoza, an individual; and DOES 1 through 50, inclusive, | Claim 3:    Wrongful Death (CCP §377.60) |
| | Claim 4:    42 U.S.C. §1983 Violation of Federal Statute |
| Defendants. | Claim 5:    42 U.S.C. §1983 Violation of First and Fourteenth Amendment Rights |
| | Claim 6:    42 U.S.C. §1983 *Monell* Related Claims |
| | **[JURY TRIAL DEMANDED]** |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## Prologue

Hazel Yoshida, on behalf of her dead granddaughter Allison Kitrell, is suing the County of Riverside, Marlene Zaragoza, D. Purcell, and Alejandra Juarez-Espinoza  for their actions and/or inactions that led, tragically, to baby Allison's death. Allison was born prematurely and toxicology positive for amphetamines, barbituates, and opiates on February 18, 2019. She was born an addict and spent her first ten days of life suffering from withdrawal in the NICU. Even though these Defendants knew with near certainty that Allison's life would be in danger if they failed to act, the Defendants failed to take even basic necessary, obvious, and statutorily mandated action to protect her. Predictably, before she was even sixteen months old, Allison died of a Fentanyl overdose on June 11, 2020. But for the actions and inactions of these Defendants, Allison would be alive today.

## Jurisdiction and Venue

1.      Hazel Yoshida, Allison's paternal grandmother is suing the County of Riverside and its workers, Marlene Zaragoza, D. Purcell, and Alejandra Juarez-Espinoza, both in her individual capacity and in her capacity as Allison Kitrell's successor in interest. On information and belief, Plaintiff qualifies as Allison's successor in interest pursuant to California Code of Civil Procedure §377.11 and is authorized to commence an action or proceeding on Allison's behalf pursuant to California Code of Civil Procedure §377.32. On information and belief, Plaintiff is authorized to act on Allison's behalf as her successor in interest with respect to her interest in this action and/or proceeding. No other person has a superior right to commence this action or proceeding.

2.      This action is brought pursuant to 42 U.S.C. §1983 to seek redress for Defendants' acts and/or omissions taken under color of law. Defendants' conduct deprived Plaintiffs of their fundamental constitutional rights secured to them under the United States Constitution, including the First and Fourteenth Amendments, and under federal and state law. In addition, this action is brought to seek redress for Defendants' acts and/or omissions which amounted to their failure to adhere to the mandatory

statutory duties they owed to the deceased minor, Allison Kitrell, and her grandmother under both federal and state law.

3.     Jurisdiction is conferred by 28 U.S.C. §§1343(a)(3) and 1343(a)(4), which provides for original jurisdiction in this Court of all suits brought pursuant to 42 U.S.C. §1983. Jurisdiction is also conferred by 28 U.S.C. §1331 because the claims for relief derive from the United States Constitution and/or the laws of the United States. This Court has supplemental jurisdiction over Plaintiffs' state law claims, pursuant to 28 U.S.C. §1367.

4.     This action also arises under California Code of Civil Procedure §377.60 and §377.30 for the wrongful death of Allison while Allison was in the County of Riverside's care, custody and control.

5.     The acts and omissions complained of herein occurred primarily in the County of Riverside. Venue is proper in the United States District Court for the Central District of California – Eastern Division.

6.     The allegations contained herein are based on Plaintiff's personal knowledge, investigation by Plaintiff's Counsel, and on information and belief.

**Parties**

7.     At all times relevant to this Complaint the deceased minor, Allison Kitrell, was a resident of Riverside, California. At the time of the allegations in this Complaint, Allison was less than sixteen months old.

8.     At all times relevant to this Complaint, Plaintiff Hazel Yoshida ("Hazel"), was a resident of Texas. Hazel Yoshida is Allison's paternal grandmother, and is Allison's successor in interest and is acting in that capacity in the instant lawsuit as well as in her own interest.

9.     Defendant Riverside County ("County") is a public entity. Riverside County DPSS is an agency and subdivision of the County.

10.     DPSS Worker Marlene Zaragoza ("Zaragoza") was an individual residing in Riverside County, and an officer, agent, and/or employee of Riverside County and

DPSS. At all relevant times Zaragoza was acting under color of law and within the course and scope of her duties.

11.    DPSS Worker D. Purcell ("Purcell") was an individual residing in Riverside County, and an officer, agent, and/or employee of Riverside County and DPSS. At all relevant times Purcell was acting under color of law and within the course and scope of her duties.

12.    DPSS Worker Alejandra Juarez-Espinoza ("Espinoza") was an individual residing in Riverside County, and an officer, agent, and/or employee of Riverside County and DPSS. At all relevant times Espinoza was acting under color of law and within the course and scope of her duties.

13.    Defendants DOES 1 through 50 are sued as fictitious names, their true names and capacities being unknown to Plaintiff. When ascertained, Plaintiff will amend this Complaint by inserting their true names and capacities. Each of the fictitiously named Defendants is responsible in some manner for the occurrences herein alleged, and those Defendants proximately caused, are responsible for and/or legally liable for Plaintiff's damages as herein alleged. Each reference in this Complaint to "Defendant," "Defendants," or a specifically named Defendant refers to and includes all Defendants sued under fictitious names. Plaintiff makes all allegations contained in this Complaint against all Defendants, including DOES 1 through 50.

14.    Whenever this Complaint references any act of the Defendants, such allegations shall be deemed to mean all named Defendants and DOES 1 through 50, or their officers, agents, managers, representatives, employees, heirs, assignees, customers, tenants, who did or authorized such acts while actively engaged in the operation, management, direction or control of the affairs of Defendants and while acting within the course and scope of their duties, except as specifically alleged to the contrary.

15.    At all times herein mentioned and with respect to the specific matters alleged in this Complaint, each Defendant (including DOES 1 through 50), was a parent, subsidiary, affiliate, alter ego, partner, agent, franchisee, licensee, employee, employer,

controlling franchiser, controlling licensor, principal, and/or joint venturer of each of the remaining Defendants, and was at all times acting within the course and scope of such agency, service, employment, control and/or joint venture, and each defendant has ratified, approved, conspired in, profited from and/or authorized the acts of each of the remaining Defendants and/or failed to prevent such acts when having the power and/or duty to do so, with full knowledge of said acts.

16.     At all times herein, each of the above identified Defendants (including DOES 1 through 50) were officer and/or agent of Riverside County, and was acting under color of law within the course and scope of their respective duties in doing the things alleged herein including but not limited to all acts and/or omissions alleged.

### General Allegations

17.     Allison's mother, Tehra Waite, had a long history of drug abuse and addiction. Her drugs of choice were methamphetamine, fentanyl, and heroin. Her addiction went unabated and untreated during the entirety of her pregnancy with Allison. In the months leading up to Allison's birth, Ms. Waite was admitted to Loma Linda Medical Center multiple times due to drug related problems. During one such stay at the hospital only a month or two prior to her due date Ms. Waite left against medical advice only to return a few days later. At that time an emergency C-section was performed due to Ms. Waite's high blood pressure and drug use.

18.     Allison was born prematurely, by C-section, on February 18, 2019. Both Ms. Waite and her baby (Allison) tested positive for amphetamines, barbiturates, and opiates. Baby Allison was born an addict and spent her first ten days of life suffering from and being treated for withdrawal in the NICU.

19.     Loma Linda contacted Riverside County Department of Social Services child protection unit (DPSS) to report suspected child abuse on, or about February 20, 2019. The County assigned Marlene Zaragoza and Alejandra Juarez-Espinosa to investigate and conduct an initial assessment. They completed their initial assessment of

the home Allison would be living in and, for whatever reason, determined it was acceptable even though they knew at that point in time that Ms. Waite was a drug addict.

20. On information and belief, the decision to refrain from seeking court intervention to detain Allison was made together by Defendants Zaragoza, Espinosa, and their Supervisor Defendant Purcell. At the point in time these Defendants made the decision to allow Allison to go home with Ms. Waite, it had already been disclosed to them that Ms. Waite "didn't know" what she was going to do with Allison when she got home; that at that moment in time Ms. Waite was being treated with the drug "Subutex" in an attempt to reduce her heroin addiction, and that the "Subutex" was not working as Ms. Waite had obviously relapsed at the time of Allison's birth. In fact, during her interview at the hospital after Allison's birth Ms. Waite disclosed that she had used "meth" at least two times in the ten day period before Allison's birth, and that Ms. Waite had last smoked Heroin on February 13, 2019 – just five days before Allison was born.

21. During their investigation Defendants also discovered that Ms. Waite had not prepared for the coming baby at all. For example, she did not have baby supplies including baby clothes, diapers, food [1], or a bassinet. Moreover, when Defendant Zaragoza spoke with hospital staff they expressly told her that Ms. Waite had not been forthcoming and they were concerned she could not be trusted. Defendant Zaragoza made all of these discoveries during her initial investigation on February 21, 2019. She shared the information with Defendant Purcell that same day.

22. On February 22, 2019, after completing her investigation and conferring in detail with Defendant Purcell, Zaragoza substantiated allegations of severe neglect against baby Allison.

23. At the point in time Defendants made the foregoing discoveries, Allison was to be hospitalized for the next three weeks and was not expected to be discharged with her mother. Thus, Defendants had plenty of time to obtain a court order to detain Allison

[1] Obviously Ms. Waite could not breast feed since she also tested positive for drugs at the time of Allison's birth.

from her drug addicted mother and to provide the at risk baby the critical services she needed to survive.

24.     Having already identified Allison as being an at-risk child in severe need of DPSS services, instead of immediately seeking court intervention to secure those services, Defendants Zaragoza and Purcell opted instead to obtain Ms. Waite's agreement to a voluntary safety plan. On information and belief, according to the terms of that voluntary safety plan Ms. Waite was to "participate in services."

25.     Together with Defendant Purcells, on February 22, 2019, Zargoza decided that "In-home" protective interventions initiated through their "safety plan," were sufficient to allow Allison to remain in the home as long as the safety interventions were adhered to in order to mitigate the identified safety threats.

26.     On February 27, 2019, Defendant Zaragoza received a call from the hospital informing her that Allison would soon be ready for discharged. Yet, for some unknown reason, Zaragoza continued to refrain from taking any further action to secure Allison's safety upon discharge – other than the so called "safety plan" with Allison's heroin addicted mother, as alleged above.

27.     On March 4, 2019, Defendant Zaragoza followed up with the service providers that Ms. Waite agreed she would treat with as part of the voluntary "safety plan." When she made the calls, Zaragoza learned that Ms. Waite was not, in fact, adhering to the terms of the "safety plan," and that Ms. Waite was not attending her services. On information and belief, that same day, Zaragoza learned that Ms. Waite had failed to show up for her drug test and thus was presumptive positive for narcotics.

28.     On March 13, 2019, Defendants Zaragoza conducted an in-home visit with Ms. Waite and Allison. At this point in time Ms. Waite claimed that she had been "sober" sober for one month. Zaragoza informed Ms. Waite that there are possible consequences if she failed to adhere to the terms of her "safety plan."

29.     Defendant Zaragoza and her supervisor, Defendant Purcell together decided that they would refrain from seeking court intervention to protect the child in spite of the obvious and apparent dangers presented throughout their investigation.

30.     On March 18, 2019, Defendants Purcells and Zargoza elected to substantiate the neglect allegations as to Allison as defined in California Penal Code §11165.2. But, for whatever reason, did not cross-report their substantiated findings to law enforcement. Instead, Allison was knowingly left in the custody and care of her heroin addicted mother and the case was closed with no further intervention. For the next several months neither Zaragoza nor any other agent of Riverside County DPSS followed up to ensure Allison remained safe.

31.     By January 2020, Ms. Waite had relapsed and used heroin again. But this time, nobody was there to protect baby Allison. A few months later, on June 7, 2020, Allison was discovered limp and non-responsive. She never regained consciousness. Four days later she was pronounced dead of a Fentanyl overdose. She was almost 16 months old. Ms. Waite was arrested and charged with felony child abuse.

## COMPLIANCE WITH CALIFORNIA TORT CLAIMS ACT

32.     Plaintiff Hazel Yoshida, both in her individual capacity and as Allison Kitrell's successor in interest, timely complied with the California Tort Claims Act by filing a claim against the Riverside County on December 9, 2020.

33.     That claim was summarily denied on December 23, 2020. Plaintiff's complaint was filed within six months of the denial of said tort claim. Thus, Plaintiff has wholly complied with the California Tort Claims Act. Plaintiff is thereby allowed to pursue both state law claims and federal constitutional claims as alleged herein.

## FIRST CLAIM FOR RELIEF

### Breach of Mandatory Duties

(By Plaintiff Against All Defendants)

34.     Plaintiff hereby refers to, incorporates by reference, and realleges all other paragraphs of this Complaint as if set forth in full.

35.     Plaintiff alleges on information and belief that at all relevant times mentioned herein Defendants, and each of them, violated mandatory duties including, but not limited to, those set forth in regulations in the California Department of Social Services (CDSS) Manual of Policies and Procedures (MPP) established pursuant to Welfare & Institutions Code §16501. Plaintiff alleges that specific statutes, regulations and policies violated by Defendants include, but are not limited to, those requiring intake and investigation as set forth in Regulation 31-125 and the requirement to make necessary collateral contacts with each person having knowledge of the condition of each child that is the subject of an allegation. Defendants violated Regulation 31-201 through failure to complete an adequate assessment of Allison's needs and failing to develop an appropriate case plan to address her needs and by failing to implement even the inadequate case plan that was eventually developed. Defendants failed to gather and evaluate information relevant to the case situation to appraise them of Allison's case services needs. Defendants violated Regulation 31-205 by failing to properly document an assessment of Allison. Defendants violated Regulation 31-206 by failing to properly document a case plan for Allison. Defendants violated Regulation 31-215 by failing to comply with the case plan time frames and administrative requirements. Defendants violated Regulations 31-225 and/or 31-235 by failing to update case plan documentation. Defendants violated Regulation 31-310. Defendants violated Regulation 31-315. Defendants violated Regulation 31-320 by not complying with the social worker contact requirements. Defendants violated Regulation 31-325 by not complying with the social worker contact requirements with Allison's mother. Defendants violated Regulation 31-335 by failing to comply with the social worker contact requirements with other service providers.

36.     Other statutes, regulations and policies violated include California Penal Code §§11166, et seq. by failing to report known and/or suspected neglect and/or abuse of Allison, Regulations 31-320 and 31-330 of the CDSS Manual of Policies and Procedures by failing to adequately conduct face-to-face contacts and Regulation 31-501

of the CDSS Manual of Policies and Procedures by failing to report and/or properly investigate reports of abuse or neglect of Allison.

37.    Plaintiff alleges that Defendants, and each of them, continuously breached their mandatory duties as set forth in the preceding paragraphs.

38.    Plaintiff alleges that had Defendants not breached their mandatory duties, they would have been required to act upon evidence of the inappropriateness of leaving Allison in the care of her heroin and "meth" addicted mother and would have been obligated to take measures to protect her and to provide her with services necessary to preserve her life, including the seeking of court intervention to remove her from her drug addicted mother's care and custody.

39.    As a proximate result of Defendants' woeful failures to fulfill their mandatory duties, baby Allison suffered neglect, abuse and/or mistreatment to the point of death from an Fentanyl overdose.

40.    As a direct result of the acts and omissions of Defendants, baby Allison sustained general and special damages in amounts within the jurisdictional limits of this court according to proof at trial.

41.    Riverside County is vicariously liable for the acts and/or omissions of the individual Defendants, and each of them in that at all relevant times said Defendants were acting within the course and scope of their duties as agents of the County.

## SECOND CLAIM FOR RELIEF

## NEGLIGENCE

(Pursuant to Cal. Gov't Code §§815.2, 815.6)

(Against All Defendants)

42.    Plaintiff incorporates all previous paragraphs of this Complaint as though fully set forth at length herein.

43.    Defendants Zaragoza, Espinoza, Purcell and DOES 1 through 50, were tasked with the responsibility to investigate child abuse allegations against M s. Waite

and were charged with the specific responsibility to protect children, including baby Allison, from harm and/or neglect.

44.    After being assigned to do so, Defendants Zaragoza, Espinoza, Purcell and DOES 1 through 50, investigated the child abuse allegations against Ms. Waite, and substantiated the child abuse allegations. Defendants Zaragoza, Espinoza, Purcell and DOES 1 through 50, knew that Ms. Waite abused heroin and "meth" and demonstrated a proven pattern of uncontrolled abuse including getting high just days before giving birth. Defendants Zaragoza, Espinoza, Purcell and DOES 1 through 50, identified a high and/or foreseeable probability that Ms. Waite posed a future risk to the baby Allison.

45.    Defendants Zaragoza, Espinoza, Purcell and DOES 1 through 50 had a special relationship with the baby Allison. Once, having apprised themselves of the danger and/or risk to Allison, Defendants Zaragoza, Espinoza, Purcell and DOES 1 through 50 had a duty to exercise ordinary care to protect her from harm.

46.    Defendants Zaragoza, Espinoza, Purcell and DOES 1 through 50 failed to set up necessary safeguards, implement a mandatory and/or adequate safety plan, intervene to protect the minor Plaintiffs, and/or seek court intervention to protect baby Allison.

47.    Defendants Zaragoza, Espinoza, Purcell and DOES 1 through 50's acts and/or omissions were a substantial factor in causing Plaintiffs' harm.

48.    As a direct and proximate result of Defendants Zaragoza, Espinoza, Purcell and DOES 1 through 50's conduct and/or misconduct, Plaintiffs have suffered general and special damages according to proof at trial.

49.    California Government Code, §820 provides that an employee of a public entity is liable for his or her acts or omissions to the same extent as a private person, and under California Government Code, §815.2 the public entity that employs the individual is vicariously liable for the torts of its employees committed in the scope of employment. At all relevant times, Defendants Zaragoza, Espinoza, Purcell and DOES 1 through 50 were acting with the scope of their duties and/or employment with the County.

50.     Riverside County is vicariously liable for the acts and/or omissions of the individual Defendants, and each of them in that at all relevant times said Defendants were acting within the course and scope of their duties as agents of the County.

### THIRD CLAIM FOR RELIEF

For Wrongful Death - CCP §377.60

By Plaintiff Hazel Yoshida, individually

(As Against All Defendants)

51.     Plaintiff hereby incorporates by reference all other paragraphs of this Complaint as if set forth in full.

52.     As a direct and indirect result of the acts and omissions of Defendants, and each of them, as herein alleged, baby Allison sustained severe and serious injuries resulting in her death.

53.     As a direct and legal result of the conduct of the Defendants, and each of them, and of Allison's death, Plaintiff has suffered both special and general damages, including but not limited to loss of the society, companionship, comfort and support of her granddaughter Allison, in an amount to be shown according to proof.

54.     Riverside County is vicariously liable for the acts and/or omissions of the individual Defendants, and each of them in that at all relevant times said Defendants were acting within the course and scope of their duties as agents of the County.

### FOURTH CLAIM FOR RELIEF

### VIOLATION OF FEDERAL STATUTE

(Pursuant to 42 U.S.C. §1983)

(By Plaintiff Against Defendants Zaragoza, Espinoza, Purcell

and DOES 1 through 50)

55.     Plaintiff incorporates all paragraphs of this Complaint as though fully set forth at length herein.

56.     At all relevant times, Defendants Zaragoza, Espinoza, Purcell

and DOES 1 through 50, were employed in one capacity or another by Defendant County and were required to adhere the federal statutes and mandates that govern the duties and obligations of child protection workers nationwide.

57.     On information and belief, Defendant Riverside County has received millions of dollars in federal funds to meet the needs of and/or provide services to children in its child welfare system and is therefore required to comply with federal mandates attached to those funds, including Titles IV-A, IV-B and IV-E of the Social Security Act; 42 U.S.C. §§601, et seq.; 621, et seq.; 629, et seq.; 671, et seq., the Child Abuse Prevention and Treatment Act (CAPTA), the Adoptions and Safe Families Act, and/or Community-Based Child Abuse Prevention (CBCAP) program.

58.     On information and belief, the State of California has codified the federal mandates and its own obligations under parts of the Cal. Welf. & Inst. Code. Further regulations are spelled out in California's Department of Social Services' Child Welfare Service's Manual of Policies and Procedures (hereinafter "DSS MPP").

59.     On information and belief, under these laws and regulations, once it was determined that services were necessary to ensure Allison's continued safety and security, the County and the individual Defendants, and each of them, were required to complete an assessment, develop and/or implement a formal safety and/or case plan, and/or a program of supervision, and/or document the plan.

60.     Defendants, and each of them, determined that child welfare services and/or supervision was necessary to protect baby Allison from harm.

61.     The acts and/or omissions of Defendants, and each of them, were done and/or undertaken with a reckless disregard for known danger to baby Allison caused by Defendants' abandonment of the obvious and necessary case plan and/or supervision, and the concomitant likelihood that baby Allison would suffer injury as a result.

62.     Defendants knew, or reasonably should have known that abandoning the development and/or implementation of the necessary case plan, services, and/or supervision, placed baby Allison at risk of harm. Given Ms. Waite's known history

Defendants, and each of them, knew or reasonably should have known that it was unreasonable and recklessly dangerous to affirmatively abandon the development and/or implementation of the necessary case plan, services, and/or supervision. Yet, Defendants refrained from preventing further harm to baby Allison by doing so. Accordingly, Defendants, and each of them, acted and/or refrained from acting with a deliberate indifference baby Allison's safety and security.

63.     As a direct and proximate result of the acts and omissions of Defendants, and each of them, as detailed above, Plaintiffs, and each of them suffered damages in an amount according to proof at trial.

64.     The acts and omissions of Defendants, and each of them, as herein alleged were intentional and/or done with a conscious disregard for Plaintiffs' known rights. Because Defendants acted with a wanton and reckless disregard of Plaintiffs' obvious and known rights, Plaintiffs are entitled to recover punitive damages against the individual defendants as according to proof at trial.

**FIFTH CLAIM FOR RELIEF**

**VIOLATION OF FEDERAL CIVIL RIGHTS**

(Pursuant to 42 USC § 1983)

(By Plaintiff Against Defendants Zaragoza, Espinoza, Purcell

and DOES 1 through 50)

65.     Plaintiff incorporates all previous paragraphs of this Complaint as though fully set forth at length herein.

66.     The Fourteenth Amendment imposes a duty on the government to protect individuals from harm by third parties where the government or its agents expose the plaintiff to a known or obvious danger by acting with deliberate indifference to it. *Henry A. v. Willden*, 678 F.3d 991, 998 and 1002 (9th Cir. 2012). When a government official creates or exposes an individual to a risk of harm – and the individual is injured as a result – constitutional rights are violated. *Id.* at 1002-1003.

67.     In addition, the First Amendment protects those relationships, including family relationships, that presuppose deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life.

68.     These Defendants, and each of them, were charged with the affirmative obligation, that is, the duty to investigate allegations of child abuse and neglect, to provide the parent and/or child with appropriate services and/or safeguards to mitigate, prevent, and/or address any identified and/or substantiated abuse allegations, and to ensure any identified children are safe and/or protected from any substantiated abuse allegations and/or future harm.

69.     These Defendants, and each of them, at all relevant times, knew of the danger Ms. Waite posed to her child, Allison, with absolute certainty.

70.     These Defendants, and each of them, chose to investigate – and substantiate – child abuse allegations, and undertake to install and enforce a safety plan for Allison. As a result, a special relationship arose requiring Defendants to protect Allison from the known and/or suspected danger her heroin addict mother posed.

71.     These Defendants, and each of them, through their investigation discovered, and therefore knew that Ms. Waite was an admitted hard drug user and addict and that she even took heroin and "meth" only days before Allison was born. They further knew and/or suspected that Ms. Waite posed a "high" risk of abusing or neglecting her child in the future due to her heroin and "meth" dependency and addiction.

72.     Despite this, these Defendants, and each of them, refused and refrained from seeking court intervention, refused and refrained from setting up necessary safeguards, refused and refrained from implementing a mandatory safety plan, refused and refrained from setting up a monitored case plan, and/or refused to intervene in any substantive way to protect the minor Plaintiff.

73.     The individual Defendants, and each of them, ignored the potential risk to Allison, and knowingly exposed her to a serious threat and danger that Allison would not have faced otherwise.

74.     As a direct and proximate result of Defendants' acts and/or omissions, Allison's rights arising under the Fourteenth Amendment were violated; and, she died as a result

75.     At all relevant times, Plaintiff Yoshida was Allison's paternal grandmother and had established a strong familial bond and attachment with Allison. She was a viable protective placement alternative for Allison which Defendants, and each of them, ignored. As a direct and proximate result of Defendants aforementioned acts and omissions, Hazel Yoshida was deprived of a continued familial relationship with her granddaughter, Allison, in that Allison died of a Fentanyl overdose as a result of the individual Defendants' aforementioned acts and/or omissions, and thereby suffered harm in an amount according to proof at trial.

76.     The individual Defendants, and each of them, conduct as herein alleged was intentional and/or with a conscious disregard for Plaintiffs' rights. As a result of this misconduct, Plaintiffs are entitled to recover punitive damages against the individual defendants.

## SIXTH CLAIM FOR RELIEF

### (*Monell* Related Claims 42 U.S.C. § 1983.)

(By Plaintiff Against The County of Riverside)

77.     Plaintiff incorporates all previous paragraphs of this Complaint as though fully set forth at length herein.

78.     The County and HHSA had a duty to implement and follow policies, customs, and/or practices which confirm and provide the protections guaranteed under the United States Constitution and under federal law. The County had a duty to use reasonable care to train, supervise, and/or control its agents, so as to protect these constitutional and statutory rights.

79.     Based on the duties charged to its social workers, including the duty to protect children from harm, the County knew or should have known of the need to establish policies and/or customs required to protect the civil rights of children with whom their agents regularly came into contact – and identified as being subject of abuse and/or future abuse. The County knew or should have known of the need to adequately train its social workers to comply with federal and state mandates related to the protection of such children.

80.     At the time of the underlying events, the County's policies included, but were not limited to:

a.      Not requiring a social worker to provide necessary services and/or implement a mandatory safety and/or case plan – after child abuse allegations have been substantiated against a parent, a danger has been identified, and/or a need for such services has been identified.

b.      Not requiring a social worker to seek judicial intervention and/or promote a case after child abuse allegations have been substantiated against a parent, a danger has been identified, and/or a need for such services has been identified.

c.      Not requiring a social worker to regularly monitor, visit, interview, and/or checkup on a parent, a danger has been identified, and/or and/or child that were the subject of a substantiated child abuse allegations.

d.      Of leaving a child, like Allison, in a home in which a parent has substantiated "severe" child abuse allegations, and who repeatedly demonstrated a need for services and/or had been identified as needing "services."

81.     At the time of the underlying events, the County's customs and/or practices included, but were not limited to:

a.      Not requiring a social worker to provide necessary services and/or implement a mandatory safety plan – after child abuse allegations have been

substantiated against a parent, a danger has been identified, and/or and/or a need for such services has been identified.

b.   Not requiring a social worker to seek judicial intervention and/or promote a case after child abuse allegations have been substantiated against a parent, a danger has been identified, and/or a need for such services has been identified.

c.   Not requiring its social worker employees to regularly monitor, visit, interview, and/or checkup on a parent and/or child that were the subject of a substantiated child abuse allegations.

d.   Of leaving a child, like Allison, in a home in which a parent has substantiated "severe" child abuse allegations, and repeatedly demonstrated a need for services and/or has been identified as needing services.

82.   The individual Defendants, and each of them, created the danger to the Allison, as detailed above, they were acting pursuant to and in accordance with the County's regularly established customs, policies, and practices. The above described actions and/or inactions were further carried out with supervisor authorization and/or approval. The County's Social Worker Supervisors did not discipline, investigate, and/or report their subordinate social workers for their aforementioned acts and/or omissions.

83.   The County did not investigate or discipline The individual Defendants, and each of them, for or in relation to their respective conduct, acts, and/or omissions alleged herein. The County regularly fails to discipline and/or investigate its social workers for depriving a child of his or her constitutional rights and/or exposing a child to an identifiable danger.

84.   The County refuses to admit that its social workers commit a constitutional violation when they fail to protect a child from foreseeable and/or previously identified harm, and failing to ensure that child's reasonable safety. The County denies that The individual Defendants, and each of them, violated Plaintiff's constitutional rights and/or

exposed Plaintiff Allison to danger. The County ratified and/or approved of The individual Defendants', and each of their, conduct.

85.     Defendant COUNTY has a responsibility to train its social workers. The County failed to train its social workers and agents as follows:

a.      That the Fourteenth Amendment protects a child's right to be free from danger created by a social worker's conduct or misconduct including that worker's acts or failures to act to protect the child from substantiated abuse.

b.      That a social worker must provide necessary services and/or implement an adequate safety and/or case plan – after child abuse allegations have been substantiated against a parent, a danger has been identified, and/or and/or a need for such services has been identified.

c.      That a social worker must regularly monitor, visit, interview, and/or checkup on a parent and child that were the subject of a substantiated child abuse allegation.

86.     The County does not provide training on all policy updates. The County does not expect its social workers to know every policy or procedure relative to the above conditions.

87.     The County's failure to train its agents on these established constitutional rights was a substantial factor in causing Plaintiffs harm. Without adequate training, The individual Defendants, and each of them, were unfamiliar with and oblivious to their obligations and Plaintiffs' rights.

88.     The County knew or should have known the full nature and extent of the above enumerated rights and obligations. But, the County knowingly refrained from (1) revising and/or implementing relevant policies, and (2) training it social workers regarding the identified rights and obligations.

89.     These actions, and/or inactions, of the County were the moving force behind the Plaintiffs' injuries, as alleged herein; and as a result, Plaintiffs have sustained general and special damages, in an amount to be proven at trial.

**Jury Trial Demand**

90.     Plaintiff demands a jury trial on each Claim for Relief set forth above.

**Prayer for Relief**

WHEREFORE, Plaintiff prays for judgment against Defendants, as to all causes of action, as follows:

1.      General damages and special damages according to proof at trial;

2.      As against the individual defendants, punitive damages as allowed by law;

3.      Attorneys' fees, if any, as allowed by law;

4.      Costs of suit incurred herein; and

5.      Pre-judgment interest against all Defendants; and

6.      Such further relief as the Court deems just and proper.


                                        The Law Offices of Shawn A. McMillan, APC.

June 21, 2021                           /S/ Shawn A. McMIllan
                                        Shawn A. McMillan, Esq.
                                        Stephen D. Daner, Esq.
                                        Counsel for Plaintiff Hazel Yoshida